IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 12-cv-02759-LTB

HOLLY KAVA,

        Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

        Plaintiff, Holly Kava, appeals from the Social Security Administration Commissioner's (the "Commissioner") final decision partially denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), filed pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument will not materially aid in resolving this appeal. After considering the parties' arguments and the administrative record, for the reasons below, I affirm the Commissioner's final order.

## I. STATEMENT OF THE CASE

        Plaintiff filed applications for SSI and DIB in 2005. [Administrative Record ("AR") pp. 53-65]. Her applications were initially denied at the administrative level on March 22, 2006. [*Id.* at 29-34]. An Administrative Law Judge ("ALJ") subsequently conducted a hearing on December 5, 2006 (*id.* at 363-92), and issued a written ruling on December 28, 2006. [*Id.* at 16-27]. The ALJ denied Plaintiff's applications on the basis that she was not disabled during the relevant time period because she could perform her past relevant work given her residual

functional capacity ("RFC"), age, education, and work experience. [*Id.*] Plaintiff appealed the denial of her application to the Social Security Administration Appeals Council ("Appeals Council"). [*Id.* at 10-15]. On July 24, 2007, the Appeals Council declined to review the decision of the ALJ, making the denial final for the purpose of judicial review. [*Id.* at 5-8]. Plaintiff then requested review by this Court. On September 4, 2009, this Court remanded the case for further proceedings based on the ALJ's failure to obtain a consultative examination in making his RFC determination. [*Id.* at 422-35].

Upon remand, the ALJ held another hearing on April 12, 2011. [*Id.* at 401]. On May 4, 2011, the ALJ issued a partially favorable decision finding Plaintiff became disabled on her 55th birthday (July 17, 2009), but had not been disabled before that date. [*Id.* at 397-412]. Plaintiff filed exceptions with the Appeals Council on June 3, 2011, of which the Appeals Council declined to assume jurisdiction. [*Id.* at 393-96]. Thus, the ALJ's decision was the final decision of the Commissioner for purposes of judicial review.

Plaintiff timely filed her Complaint with this Court seeking review of the Commissioner's final decision. [Doc. # 1]. Specifically, Plaintiff challenges the ALJ's determination that Plaintiff had not been disabled prior to her 55th birthday. [*Id.*] This review is limited specifically to this determination.

## II. FACTS

The facts are largely undisputed and extensively provided in the ALJ's order dated May 4, 2011. As such, I provide a limited factual background as relevant here.

Plaintiff was born on July 17, 1954, was 50 years old on her alleged amended onset date of June 5, 2005, was 51 at the time of the ALJ's first decision in 2006, and 56 at the time of the ALJ's 2011 decision. She graduated from high school and completed four years of college education. [AR 422-23]. Her past relevant work history consists of work as a waitress, bartender, cook, cleaner, and restaurant manager. [*Id.* at 423]. She also previously owned a kitchen where she prepared and served food, ordered supplies, cleaned, and did bookkeeping. [*Id.*]

Pursuant to 20 C.F.R. § 404.130, in order to be eligible for benefits, Plaintiff must prove that her disability began before the date through which she remained insured, which in this case was December 31, 2007. Thus here, the relevant time period for determining disability is June 5, 2005 through the date of the ALJ's decision, December 31, 2007. [*See id.*]; 20 C.F.R. § 404.130. During the relevant time period Plaintiff was not engaged in substantial gainful activity. [AR 404]. Plaintiff reports a history of chronic abdominal pain beginning at age 27 after undergoing a hysterectomy after being diagnosed with endometriosis. [*Id.* at 176]. Plaintiff also reports an extensive history of narcotics use, beginning at age 12, when she was first put on opiates for migraine headaches. [*Id.*] Plaintiff's narcotic pain medications have included Hydrocodone, Hydromorphone, Oxycodone, and Methadone. [*Id.* at 172, 174]. Plaintiff has also taken other medications including Zofran, Protonix, and Zaleplon. [*Id.* at 174].

In May 2004, Plaintiff was treated for abdominal pain and was diagnosed with chronic right lower quadrant pain, erosion of the terminal ileum, and diverticulosis. [*Id.* at 172-75]. She was also diagnosed with acute opiate addiction. [*Id.* at 167]. Throughout 2004, 2005, and 2006, Plaintiff visited the emergency room several times for various complaints including chest pain,

lightheadedness, back pain, nausea, shortness of breath, decreased exertion, sweating, heart palpitations, and pressure. [*Id.* at 175-203]. In January 2006, Plaintiff underwent lumbar spine imaging procedures that revealed a loss of disc height at T11 representing a mild T11 vertebral body wedge stress fracture and mild spondylosis at L2-L3. [*Id.* at 341]. A physical exam revealed no tenderness in Plaintiff's back, no neurological deficits, and full orientation and normal affect. [*Id.* at 344]. In June 2006, Plaintiff was also diagnosed with likely chronic obstructive pulmonary disease and chronic pain of unknown causes. [*Id.* at 234]. In November 2006, Plaintiff was admitted for a cardiology examination at Denver Health Medical Center. [*Id.* at 252-53]. The examination revealed "low normal" left ventricular systolic function and mild to moderate mitral valve regurgitation. [*Id.* at 252]. Follow up examinations revealed granulomatous disease in Plaintiff's right lung. [*Id.* at 257-58].

Previous to the Plaintiff's onset date, Plaintiff alleges that she had received treatment from Dr. Jennifer Arnold [*see* Doc. #18 (Plaintiff's Initial Brief)], but Plaitniff has not provided any corroborating treatment records. Plaintiff has provided a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" worksheet filled out by Dr. Arnold on May 7, 2007, with extreme limitations for Plaintiff. [AR 692-98]. Plaintiff also saw Dr. Arnold several times after the last insured date for treatment related to opiate use. [*See, e.g., id.* at 1103-24, 1169-1205].

Plaintiff also underwent three consultative examinations. In February 2006, at a consultative examination Plaintiff reported a history of migraine headaches, chest pain, memory problems, and back pain. [*Id.* at 225]. An x-ray of Plaintiff's spine showed minimal osteophyte formation at several levels and endplate sclerosis at several levels. [*Id.* at 228]. An

4

electrocardiogram ("EKG") showed normal sinus rhythm, but was otherwise "distinctly abnormal." [*Id.*] Plaintiff was also examined by a state medical psychiatric consultant in March 2006, who determined Plaintiff suffered from non-severe substance addiction disorders due to acute opiate addiction. [*Id.* at 147-60]. The state medical consultant found Plaintiff had mild limitations in her ability to maintain concentration, persistence, or pace, but otherwise found no limitations. [*Id*. at 157]. At another consultative examination in 2010, Plaintiff complained of memory problems, nausea, and osteoporosis. [*Id.* at 1207]. The examination revealed no significant psychological abnormalities, some lung expansion limitations, a full range of motion in her spine and extremities, and some minor sensory issues in her extremities. [*Id.* at 1207-10].

### III.  LAW

To qualify for benefits under sections 216(I) and 223 of the SSA, an individual must meet the insured status requirements of these sections, be under age 65, file an application for DIB and/or SSI for a period of disability, and be "disabled" as defined by the SSA. 42 U.S.C. §§ 416(I), 423, 1382. Additionally, SSI requires that an individual meet income, resource, and other relevant requirements. *See* 42 U.S.C. § 1382. A Five-Step sequential evaluation process is used to determine whether a claimant is disabled under the SSA, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).

Step One asks whether the claimant is presently engaged in substantial gainful activity. If he is, benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether

the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible. *See* 20 C.F.R. § 404.1520(c). Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed RFC prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. *See* 20 C.F.R. §§ 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the previous four steps, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

### IV. ALJ's RULING

On May 4, 2011, the ALJ found that Plaintiff had met the insured requirements of the SSA through December 31, 2007. [AR 402]. He ruled that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of June 5, 2005, through the date of the ALJ's decision, May 4, 2011. [*Id.* at 404]. The ALJ found that through the date of his decision the Plaintiff had the following sufficiently severe impairments: "chronic pulmonary disease, chronic spinal disorder, hypothyroidism, hypertension, and diverticulosis and chronic opiate use." (Step Two). [*Id.*] However, the ALJ then determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled one of the listed

impairments (Step Three) in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). [*Id.* at 404-05]. Because the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, he then assessed Plaintiff's RFC. [*Id.* at 405-10].

The ALJ evaluated the evidence, and found that through the date last insured Plaintiff had the RFC to perform work light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [Plaintiff] can perform work which does not require her to crouch, crawl, kneel, or climb stairs and ramps more than occasionally, never required to climb scaffolds, ladders, and ropes, is not required to sit, for more than 30 minutes at one time without the opportunity to stand and not required to stand/walk for more than 4 hours out of an 8 hour workday. [Plaintiff] cannot be required to handle or finger objects more than frequently, cannot work at unguarded heights or near unguarded hazardous mechanical equipment, not be required to understand, remember and carry out more than simple instructions or do more than the lower-end of detailed instructions. Finally [Plaintiff] cannot be required to be exposed to excessive dust, fumes, or gases more than incidentally on a rare basis.

[*Id.* at 405]. As a result of Plaintiff's RFC assessment, the ALJ found that Plaintiff was not able to perform any of her past relevant work (Step 4). [*Id.* at 410]. Because the ALJ concluded at Step Four that Plaintiff was unable to perform any past relevant work, the ALJ continued to Step Five, and under that Step concluded that before Plaintiff's 55th birthday on July 17, 2009 there were other jobs existing in the national economy Plaintiff was able to perform. [*Id.* at 410-11]. The ALJ also concluded that Plaintiff was disabled as of her 55th birthday. [*Id.*] Consequently, the ALJ concluded that Plaintiff was not disabled between her alleged onset date and the date last insured, December 31, 2007. [*Id.*]

## V.  STANDARD OF REVIEW

I review the Commissioner's decision (expressed here as the ruling of the ALJ) "to determine whether the factual findings are supported by substantial evidence in light of the entire record and to determine whether the correct legal standards were applied." *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003). My review of the factual findings is to determine whether they, "are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (quotations omitted). It requires "more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

## VI.  APPEAL

Plaintiff challenges the ALJ's determination of no disability before Plaintiff's 55th birthday. Specifically, Plaintiff contends that the ALJ's Step Four evaluation of Plaintiff's treating physician, Dr. Jennifer Arnold, was improper.

The parties do not dispute that Dr. Arnold was a treating source. According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). In fact, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). A

treating physician's opinion is accorded this weight because of the unique perspective they have to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

When assessing how much weight to give a treating source opinion, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ must first determine whether the opinion is conclusive– that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330. To do so, the ALJ:

> [M]ust first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [ . . . ] [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F3d at 1300 (*applying* SSR 96-2p, 1996 WL 374188, at *2) (internal quotation marks and citations omitted); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If, however, a treating physician's opinion is not entitled to controlling weight, the ALJ must proceed to the next step because, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F3d at 1300. At Step Two, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight

assigned." *Krauser*, 638 F.3d at 1330.  If this is not done, remand is mandatory.  *Id.*  As SSR 96-2p explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *4) (emphasis added).  Hence, the absence of a condition for controlling weight raises, but does not resolve the second, distinct question of how much weight to give the opinion.  *Id.* at 1330-31 (*citing Langley*, 373 F.3d at 1120) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis")).  In weighing the opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331.  In applying these factors, "an ALJ must 'give good reasons in the notice of determination or decision' for the weight he ultimatel[y] assign[s] the opinion." *Watkins*, 350 F.3d at 1300 (*quoting* 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).  Without these findings, remand is required.  *Watkins*, 350 F.3d at 1300-01; *accord Krauser*, 638 F.3d at 1330.  Lastly, if the ALJ

rejects the opinion entirely, he must give "specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1301.

Plaintiff alleges that the ALJ erred by improperly rejecting the opinion of Dr. Arnold. [*See* Doc. # 18]. Specifically, Plaintiff contends that the ALJ's finding giving Dr. Arnold's opinion "appropriate weight" was improper, and instead argues that Dr. Arnold' s opinion should have been given more deference, if not controlling weight, and lastly Plaintiff argues that Dr. Arnold's opinions as to Plaintiff's vocational abilities were not issues reserved to the Commissioner and thus her opinions were proper. I disagree.

Here, under the applicable framework, I find that the ALJ did not reject Dr. Arnold's opinion altogether. Instead, he determined that Dr. Arnold's opinion, was not controlling, and thus he ascribed it "appropriate weight" according to its inconsistency with the entire record. [AR 409]. The ALJ then, as he must, gave "good reasons" for the decision "that are sufficiently specific to make clear to any subsequent reviewers the weight . . . [given] to the treating source's medical opinion[ ] and the reason for that weight." *Robinson,* 366 F.3d at 1082 (internal quotation marks omitted). Specifically, the ALJ explained:

> The undersigned has considered the medical source statement of the claimant's treating source, Dr. Arnold []. However, Dr. Arnold has documented minimal objective evidence of physical impairments to establish this degree of disability and there is no evidence Dr. Arnold has any training and/or experience in vocational assessment on which to base an opinion of the claimant's vocational profile. While Dr. Arnold's medical opinion is given appropriate weight according to its consistency with the medical evidence as a whole, that portion of Dr. Arnold's opinion on the claimant's vocational functioning is disregarded, as the Commissioner has reserved such vocational issues to the ultimate fact-finder.

[AR 409]. In making this finding, the ALJ referenced Dr. Arnold's questionnaire, titled Medical Source Statement of Ability to do Work-Related Activities (Physical), dated May 7, 2007. [*Id.*

(citing AR 692-98)]. In the questionnaire, Dr. Arnold concluded that Plaintiff could never lift or carry ten or more pounds, could sit for ten to fifteen minutes at one time, could stand for no more than three minutes at a time, and could walk for no more than ten minutes at a time. [*Id.* at 692-98]. In an eight-hour work day, Dr. Arnold alleged that Plaintiff could sit for a total of ninety minutes, stand for a total of nine minutes, and walk for a total of thirty minutes. [*Id.*] According to Dr. Arnold, Plaintiff could occasionally reach, handle, finger, feel, and push/pull occasionally and could never operate foot controls of any kind, and could occasionally climb stairs and ramps, could never climb ladders or scaffolds, balance, stoop, kneel, crouch or crawl. [*Id.*] Dr. Arnold also provided that Plaintiff had short memory problems, and her vision was impaired. [*Id.*] In regards to Plaintiff's physical activity capabilities, Dr. Arnold contended that Plaintiff could not go shopping, travel without a companion, walk more than a block, use public transportation, or sort, handle or use papers/files. [*Id.*]

In determining that Dr. Arnold's opinion was not entitled to controlling weight, the ALJ first explained that Dr. Arnold's opinion as to Plaintiff's extreme limitations were not documented by objective evidence, were not well-supported by the record as a whole, were from an unknown treatment period, and were inconsistent with other substantial evidence in the record, including her own treatment notes from the same day and other physician's treatment notes in the record. [*Id.* at 405-09]. The ALJ's determination at this step was proper. *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (holding that if a treating physician's opinion is inconsistent with other substantial evidence in the record it is not entitled to controlling weight).

The ALJ then moved to the second step of the analysis and provided the weight to be given to Dr. Arnold's opinion. In determining that Dr. Arnold's opinions in the worksheet were not entitled significant weight, the ALJ cited three of the factors from 20 C.F.R. § 404.1527(c): Dr. Arnold's opinion was based upon an unknown treatment period of which no treatment records have been provided, Dr. Arnold's extreme limitations were not supported by relevant evidence, and Dr. Arnold's opinions were not consistent with the other substantial evidence in the record, (AR 409). *See* 20 C.F.R. §§ 404.1527(c)(2)(treatment relationship), 404.1527(c)(3)(supported by relevant evidence), 404.1527(c)(4)(consistency).

In regards to Dr. Arnold's treatment relationship, Plaintiff has failed to provide relevant information to determine the nature of Plaintiff's treatment relationship with Dr. Arnold. The only documents provided for Dr. Arnold are the questionnaire, dated May 5, 2007, treatment notes from that same day, and later treatment records beginning in 2009. [AR 692-98, 1103-24, 1169-1205]. The nature and extent of the relationship, if there was one at all, cannot be determined from the questionnaire. [*Id.*] The records do not show that Dr. Arnold performed any examinations, and there are no functional limitations noted. Her only indication of treatment is the worksheet she filled out. Thus, the extreme limitations provided by Dr. Arnold are not supported by evidence in Dr. Arnold's treatment notes.

Instead, the ALJ observed several inconsistencies between the extreme limitations Dr. Arnold provided and the record. Specifically, the ALJ observed that Dr. Arnold's assessed extreme limitations were inconsistent with Plaintiff's lack of complaints related to pain and treatment. The ALJ explained that:

>the medical records show that the claimant was evaluated for abdominal pain only twice and prior to the alleged onset of disability in May and August of 2004; for chest pain and only twice, in July 2005 and June 2006; and for lower back pain only once in January of 2006. The infrequency with which she reported these problems and sought treatment was inconsistent with her description of extreme symptoms and limitations at that time.

[AR 407]. Additionally, Dr. Arnold's opinion, reflected in the questionnaire, is inconsistent with her own report from the same day. In the questionnaire Dr. Arnold opined that Plaintiff could not carry out routine ambulatory activities such as shopping, banking, walking more than a city block, or using public transportation. [*Id.* at 697]. But in a separate medical record from the same date, she indicated that Plaintiff walked daily and enjoyed "gardening/landscaping, fishing, television, and walking," (*Id.* at 700). *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is . . . inconsistent with other evidence." (internal quotation marks omitted)).

The ALJ also provided that Dr. Arnold did not have the requisite training or experience to support her conclusion regarding Plaintiff's vocational functioning, and that such conclusions are reserved to the Commissioner, as the ultimate fact-finder. Social Security Regulations state that "[o]pinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d)(1)-(3) (providing a non-exhaustive list of examples of issues reserved to the Commissioner). Here, the ALJ's conclusion that Dr. Arnold's opinion on Plaintiff's vocational capabilities is one of the issues reserved to the Commissioner and therefore is not a medical opinion requiring consideration was proper. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (explaining that a treating physician's opinion on an issue

14

reserved to the Commissioner is not binding on the Commissioner in making his ultimate disability determination).

Based on a review of the record, I find that the ALJ did not err when he gave Dr. Arnold's opinions little weight. The ALJ properly noted the lack of corresponding treatment notes establishing a treating physician's relationship between the Plaintiff and Dr. Arnold, that the extreme limitations provided in Dr. Arnold's worksheet were inconsistent with Plaintiff's activities and Dr. Arnold's own treatment record from the same day, and that Dr. Arnold's conclusions regarding Plaintiff's vocational capabilities were properly reserved for the Commissioner. Additionally, the ALJ's findings are in line with Dr. Gardner's consultative examination findings, which the ALJ gave great weight (AR 407-08). *See Pisciotta*, 500 F.3d at 1078; 20 C.F.R. § 404.1527(d)(3)(specifying that the "more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion").

Accordingly, I find no error in the ALJ's decision to give Dr. Arnold's opinions diminished weight, *see Watkins*, 350 F.3d at 1301, which is supported by substantial evidence in the record.

## VII.  CONCLUSION

For the foregoing reasons, I AFFIRM the Commissioner's final order after remand.


Dated: January 13, 2014, in Denver, Colorado.


                                          BY THE COURT

                                            s/Lewis T. Babcock
                                          LEWIS T. BABCOCK, JUDGE